And our final case of the morning is Sloan v. American Brain Tumor Association. Mr. Matten. Good morning, Your Honor, Counsel. May it please the Court. There's only a couple of pieces in this case, and they happen very close together, but let's stitch them together. I've decided on a six-day suspension without pay. I don't even think that you can do this. My understanding is it's against federal law. I would like an investigation and have hired a lawyer. The de novo question for this Court on this pleading case is whether or not those facts, when understood in their context, taken together, stitched together, as context requires, makes it plausible that a reasonable employer understood that she was making a complaint about the unpaid nature of her suspension, about the employer illegally docking her pay. What would make docking the pay illegal? Your brief says several times, well, there are regulations about this. It doesn't quote those regulations, and it doesn't provide an argument about what's illegal. So what makes the docking illegal? Okay. The 504-602 is the CFR that we referenced. Under Section A of that CFR, it says exempt employees must be paid for the entire week, those on the salary basis, must be paid for the entire week if they work any part of that week, meaning that you cannot suspend them for a day. But those regulations are about defining exempt versus non-exempt employees. It doesn't give exempt employees the right to enforce those regulations. It doesn't provide a cause of action for the exempt employees against the employer. Right, but the question under Saperstein from this Court is whether or not her complaint is related to, under or related to those issues that are governed by the FLSA. Mike, where you have me, I mean, I think the complaint was formally a right. It was adverse. It, you know, invoked a violation of law. But all the cases involve overtime pay and hours and wages because those are the things that the Fair Labor Standards Act protects. Here my problem is when I'm thinking about whether this complaint provided notice that she was asserting rights under this Act, is it seemed a stretch to think that there were rights she had to assert. So it's harder to see how the employer could have been on notice that that's what was at play. Well, it comes, it kind of waterfalls down. What happens is then they would lose the exemption. Under 602B where the exceptions to that rule come into play to dock the salary for less than a full week, ostensibly then if they had done that, the plaintiff could make a complaint that they had treated her as a non-exempt employee and thus the defendant lost the exemption and could bring an action in that manner. But again, under Saperstein- I looked in your brief for an argument that if this Act cost the defendant the exemption, there would then be a violation of the statute. I didn't see any argument. Why would, if you lose an exemption, that's not the same thing as violating the Fair Labor Standards Act. Where is the violation of the Fair Labor Standards Act? Where's the arguable violation? Two things. One is certainly they would have a cause of action if the exemption is lost, then the plaintiff could be part of a cause of action to recover the damages that- If there were a violation. I don't even see an argument in your brief. In fact, I don't even see an assertion in your brief that if the exemption is lost, then there was a violation of the Act. The reason you don't see it in our brief is because under Saperstein, we don't need to have an actual violation of the FLSA for it to be under or related to. You have to have a non-frivolous claim of a violation. And in order to have a non-frivolous claim, you have to have at least a theory of something. Paul Dirac was famous for saying that particular theories weren't even wrong. This was in physics. They were so bad, they weren't even wrong. What I was looking for in your brief was an argument that at least could be wrong, but non-frivolous. I didn't find an argument. Well, again, I would go back to Saperstein. If we look at Saperstein, the underlying issue there- Forget Saperstein. You're standing here in the Court of Appeals. Could you articulate an argument about why, if the exemption was lost, the Fair Labor Standards Act was violated? Because then it would have owed her additional sums of money. How do we know that? Because she was an exempt salary employee. She was treated on a salary basis. If they lose the exemption, then they would have had to go back and look at the time that she worked. Did they have a written policy regarding discipline? Because if they had a written policy, then there was no argument that it violated that regulation. I'm sorry. Did they have a written policy regarding discipline and suspension without pay? Because the regulation says if there's a written policy, even exempt employees can be suspended without pay. The regulation does say that. The short answer to your question is I don't know. We haven't had discovery. We haven't figured out. The two parts of that regulation that Your Honor cites, one is that it has to be exercised in good faith for a rule violation that is written. That's what the 602B5 states. I don't have information on either one of those because we haven't had any discovery on this case. I don't know if there's a policy handbook in place for this organization. Then why did you concede that there wasn't any kind of Fair Labor Standards Act violation? I didn't. Oh, I thought you did. I thought that. No, the district court's opinion said that I did, but I did not concede that. What we had done in the briefing of the district court was to make the alternative argument that says even if it were not illegal to do that, then she still has a cause of action because it is underrelated, and it was an argument about good faith. Did she have a good faith reason to believe that this was a violation of federal law? And what we explained was that under Illinois law, it certainly, this used to be the standard under FLSA before they changed the regs in 2004. Illinois kept those regulations back in 2003, refused to make that change, so she had a good faith belief. We were demonstrating a good faith belief in that. All right. You've got her income, and you know what the minimum wage is under the Fair Labor Standards Act. So if you work it out, how many hours a week did she have to work before her gross pay, before tax, fell under the Fair Labor Standards Act requirement? As I stand here, I don't know the answer to that question. You don't need discovery for that. Your own client has that information. Sure. And all you have to do is do long division. But it's long division. I hope you didn't see my problem. Well, respectfully, Judge, and you told me to stay away from Saperstein, but I'm going to go there again. Saperstein, in that case, there was no FLSA violation because the employer there was not an employer under the FLSA. So there was actually no violation. You have to have a non-frivolous theory of violation. And I keep saying I can't see any theory of violation. The non-frivolous argument of violation from the employee's standpoint might very well be under 602. I'm not looking for very well be. I'm looking for a theory. Sure. The regulation says that the salaried employee must be paid for the full week, for any part of that week in which they work. In this case, there was a six-day unpaid suspension, meaning that she would have lost income, been docked pay in violation of that regulation for the extra day. She wasn't working that week. I give up. Yes, she wasn't working that week, and she was not, under the suspension, not supposed to be working the sixth day into the following week. That is a week in which she would have worked four days, and she would have still been docked and received less than her full amount of pay, which would have been a violation of 541-602, a reasonable non-frivolous violation of that argument. With that, I'll reserve the balance of my time for the rebuttal. Thank you, Mr. Madden. Mr. Reisses. Good morning. May it please the Court. My name is Mike Reisses, and I'm here for the defendant of Pelley American Brain Tumor Association. All right, so plaintiff claims that she engaged in FLSA-protected activity on three occasions. The first is her oral statement, I don't even know if you can do this. And we had a lot of argument already, but we didn't really focus on the context of those words. So she makes that statement after she was suspended six days without pay. That much is clear. That's the only thing that's clear. The statement was made a day after a meeting. The meeting was held to discuss management training and a staff retreat. There was nothing about the meeting that related to anything in the FLSA. There was an argument that took place at the meeting. The argument had nothing to do with anything relating to the FLSA. The statement, I don't even know if you can do this, those words by themselves don't tell you anything, really. Every case cited by the plaintiff, from Kasten, before Kasten, after Kasten, where the complaint was actionable, had to do with, the dispute had something to do with the FLSA. Not so here. Not so here. The statement can be plausibly read to simply mean that I challenge your right to impose discipline. It could mean, it could mean what he wants it to mean, but it's vague. At the very least, it is vague. And what Kasten teaches us is that it has to be of sufficient detail, the complaint has to be of sufficient detail to put the reasonable employer on fair notice that the plaintiff is asserting FLSA-protected activity. Counsel, when her lawyer sent you the letter, so when she emails the board and says, you know, it's my understanding this is against federal law, and her lawyer sends a letter saying, you know, she has legal claims, you know, as she referenced yesterday, what legal claims might you have been on notice that she, I know you said, oh, there are a lot of federal laws in the books, but let's think about employment laws. There are fewer of those than, you know, the whole U.S. Code. What legal claim might you have thought she was asserting? Well, okay, you're talking about the email. The email, which is the first time she says that it's her understanding that it is against federal law, doesn't identify. Counsel, she was talking about the unpaid suspension. She was talking about discipline. She was talking about discipline. And the discipline imposed was the unpaid suspension. But she didn't tell the board what the suspension was for. I mean, in terms of the nature of the suspension. Counsel, you're fighting on that. I mean, what laws might it have violated? Your Honor, as I stand here, in all honesty, I don't know, because if you look at the context of first the statement and the email, all right, it doesn't tell you anything about what law she might be talking about because she's never said anything about ours. She's never said anything about wages. Honestly, I don't know. And you know what? Even in the letter, the letter doesn't even refer to the oral statement, right? It only refers to the email. So that seems to have dropped away. And the letter just talks about the suspension without talking about any law, about any wage, about any hours. It's written for a very different purpose. Counsel, now you have focused on the FLRA because this whole case, you know, and then the FLSA because this case has been about that. What exposure, if any, might your client have had for this unpaid suspension of an exempt employee who the regulations say, you know, was not supposed to be docked to pay? Well, I mean, our position would be that we didn't, certainly we didn't, we weren't on notice. I'm not talking about notice. Okay. I'm sorry. I'm saying would you have been subject to any kind of liability under the Fair Labor Standards Act for imposing this unpaid suspension? No, I don't believe so. I do not believe so because, again, you have the statute itself doesn't prohibit unpaid suspensions. If you look at the regulations. But regulation 602.5. Right.  There's no evidence of a written policy here. So if this was a suspension without pay, not pursuant to a written policy, that cost your client the exemption. And that is what led to my question to Mr. Madden. If Sloan was not exempt, was there a violation of the Fair Labor Standards Act? And I don't think we got that argument in the brief. And the judge. I'm asking you the same question I asked him. His brief doesn't tackle that question. Neither does yours. Did you do the simple exercise I posed to him? Take Sloan's salary, divide it by the number of hours she worked, see whether it complies with the statute. No, I did not. There would have been no reason on a 12B6 motion. I mean, Your Honor, on a 12B6 motion, that would not have been done. And honestly, I have yet to see a case cited that says in this circumstance that there is FLSA protected activity. Every case that we have found talks about hours. It talks about wages. It doesn't talk about whether the suspension was for discipline. You need a plausible claim. I could think of several plausible claims, though, as I've said, Mr. Madden didn't articulate them. One is you have to keep records of the number of hours worked and whether they are in the base 40 or overtime. There could be an argument that there was a record-keeping violation. You have to pay certain amounts. There could be an argument about that if she's not exempt. I mean, one could go on. But none of that was ever alleged. It's not what she said. I believe you can always state a different case, Your Honor. I mean, if you look at the judge's decision, the last paragraph, it's interesting he makes the observation in reference to the letter, that no actual complaints about discipline or lost wages. The letter does not claim the suspension without pay was unlawful under the FLSA, probably because both plaintiff and defendant agree that it was not. We didn't brief something that neither party was really disputing. We were focused on three statements, one that was oral, a second that was an e-mail, and a third that was a five-page letter. And in a five-page letter, nothing was ever said about we're making a claim, you're asking about claims. The only claim they were specifically identifying was a potential claim for defamation, a common law claim. There was never any claim for back pay. There was never, I'm not saying that there had to be. But counsel, in the cases where you have non-exempt employees complaining, they don't invoke the words Fair Labor Standards Act. But in context of those cases, because they involve non-exempt employees, you're talking about punching in and punching out and clocks. And here it was clear she was talking about the unpaid suspension. She was talking about the discipline. And it's less clear that that triggers the FLSA simply because exempt employees don't get the same protections under the Fair Labor Standards Act that non-exempt employees do. But she was talking about the unpaid suspension. The question in my mind is how that ties into the Fair Labor Standards Act. Again, Your Honor, I don't see how just because you may lose the exemption that you're then on notice that there has been a claim of a violation of the statute in and of itself. Not on these facts. Not based on what was argued and not based on what was pled. There's also, of course, a good faith objective belief requirement that we made even if there was a sufficient detail of a complaint. Our fallback position, of course, which the district court never had to reach, which was that there was that she couldn't satisfy the good faith objective belief requirement for making this type of complaint. Counsel, I don't see anything in the e-mail which is more detailed than the one-line oral complaint that preceded it or the five-page letter from counsel complaining about the unpaid nature of the suspension. Right. All it is, and there's a lot of stuff said in this letter, is an attack on the substantive basis, the reason for the suspension.  As is her e-mail. She contests that Elizabeth Wilson had any grounds to suspend her at all. It's not a challenge to the unpaid nature of the suspension. There's nothing in any of these communications to alert the employer that that was the focus of her complaint. Your Honor, I absolutely agree with you on that. Unfortunately, this is simply an instance where you have a workplace dispute that became personal. And there is nothing about what was identified, what was alleged, what was said that would give us fair notice. Right. And she's challenging the basis for this personality conflict that has arisen. Right. And she's challenging Elizabeth Wilson's leadership, and she's challenging the vitality of the organization if she continues to lead the organization, and reaffirming her belief in the mission. It's all about the substantive reason for the suspension, not the fact that it was unpaid. Your Honor, I agree with everything you're saying. So there's no flag that this is a wages and hours violation, allegation. Exactly. Even if there were a legal basis for it. Right. I mean, look, if she was going to, listen, everything was within her knowledge and control. She got to say whatever she wanted to say about what the discipline was. And if she could have pled it, she had every opportunity to plead it. It was within her knowledge and control. And by failing to do so, she pled herself out of court. For all the reasons set forth in our brief, respectfully, we ask you to affirm. Thank you. Thank you, Counsel. Anything further, Mr. Madden? We let Mr. Braces go over time, so we'll add a minute to your time. Thank you, Your Honor. Respectfully, Judge Sykes, that there is no reference to the unpaid nature of the suspension. Defendants only get to that position if they ignore the discipline itself. Kasten teaches us clearly that context matters, and context matters in terms of That's the point of the line of questioning that I just posed to your opponent, which is that read in context, this is not a complaint about the unpaid nature of the suspension. It's a complaint about the substantive basis for the suspension. Respectfully, Judge, that's an analysis. That's what a reasonable interpretation of those communications would be. It would be an extreme stretch to construe it as a complaint about the unpaid nature, that this is a wages and hours complaint. If I may, that is a construction made in isolation rather than in context. It ignores the discipline that happened the day before. This is an email sent at 5 o'clock in the morning. It says, I want to make you aware of the discipline that was threatened against me yesterday. References the discipline. Defendant is not a stranger to this. It's not a Pollyanna in the woods. This is the discipline it chose. This is the conversation it started with her. When she references the discipline in that email, it must refer to something, and it refers to the unpaid suspension. And secondly, if I may, Judge, you're right. That may be one plausible construction, but at this stage of the pleadings, her allegations are to be credited under Saperstein, under Kasten, both in this court and the Supreme Court. She makes an allegation, paragraph 33 of the complaint, that she contested the unpaid nature of the disciplinary action against her and that it was a violation of federal law. Those are the allegations that need to be credited on this complaint at this stage of the proceedings. Counsel conceded this fact. He said it may mean what he wants it to mean, referring to myself. It may mean what the plaintiff wants. That's right. And at the 12B6 stage, we're entitled to have the allegations credited. We do not have discovery about what she meant, and it was improper for the district court below to decide for the plaintiff what she meant by those words. And with that, Your Honors, I thank you for the court's time, and we ask that the court reverse the decision below. Thank you. Thank you very much. The case is taken under advisement, and the court will be in recess.